493 A.2d 657

**George E. LOPATA, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee.**

Supreme Court of Pennsylvania.

Argued March 6, 1985.

Decided June 4, 1985.

Richard E. Gordon, Pittsburgh, for appellant.

Richard L. Cole, Jr., Chief Counsel, Michael Alsher, Associate Counsel, Charles G. Hasson, Acting Deputy Chief Counsel, Barry M. Hartman, Chief Counsel, Dept. of Labor of Industry, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

George E. Lopata (claimant) was granted discretionary review of the order of the Commonwealth Court affirming the order of the Unemployment Compensation Board of Review (Board) denying him unemployment compensation benefits. In rendering its order, the Board affirmed the unemployment compensation referee's denial of benefits on the basis that claimant lacked the required number of "credit weeks"[1] in his "base year"[2] to be eligible for

---

1. "Credit week" is defined under Section 4(g.1) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended* 43 P.S. § 751, *et seq.; added by,* Act of

---

2. See note 2 on page 573.

benefits. Section 4(a) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended* 43 P.S. § 801(a).

Claimant initially applied for benefits after being laid off by his employer, Armco Steel. After a hearing, the referee made the following findings of fact:

1. Claimant filed an application for unemployment benefits with an effective date of May 30, 1982, and thereby established, for purposes of determining his financial eligibility, a base year consisting of the four quarters of calendar year 1981.

2. During his base year claimant worked and had earnings of $50 or more in 17 separate weeks.

3. Claimant also worked and had earnings of more than $50 during the week ending January 3, 1981. This week is not included in the above mentioned 17 weeks.

The single issue before the referee was whether the claimant had accumulated the minimum eighteen (18) credit weeks during his 1981 base year necessary to make him eligible for benefits.[3] It is undisputed that claimant in point of fact worked and had earnings in excess of fifty dollars during the January 1–3, 1981, portion of the week.

Relying on a pronouncement contained in Unemployment Compensation Bulletin No. 871, Supp. 8A, (U.C. Bulletin No. 871), which had been promulgated by the Bureau of Unem-

July 10, 1980, P.L. 521, *as amended,* 43 P.S. § 753(g.1). *See infra* at 661.

**2.** "Base year" is defined under Section 4(a) of the Law, *as amended,* 43 P.S. § 753(a) as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year."

**3.** Section 401(a) of the Law provides in pertinent part:
Compensation shall be payable to any employe who is or becomes unemployed, and who—
(a) Has, within his base year, been paid wages for employment as required by Section 404(c) of this act ...
43 P.S. § 801(a).
Section 404(c) of the Law, 43 P.S. § 804(c), at the time of claimant's application, provided in pertinent part that such wages must have been earned during eighteen (18) to twenty-three (23) "credit weeks" during the claimant's base year.

ployment Compensation, the referee concluded that the week ending January 3, 1981, could not count as a credit week toward claimant's 1981 base year. That bulletin provided in pertinent part that when a calendar week overlapped two calendar quarters, a credit week would be assigned to that calendar week in which at least four days fell, regardless of whether a given claimant had in fact worked during that portion of the week. Since four days of the calendar week ending January 3, 1981, fell during the last quarter of 1980, the referee concluded that the week could not be counted as a credit week toward claimant's 1981 base year. Since claimant was then left with only seventeen (17) credit weeks in his base year, the referee denied benefits. On appeal to the Board, the referee's decision and findings were affirmed.

On appeal a Commonwealth Court majority affirmed the Board, 82 Pa. Commonwealth 126, 474 A.2d 427. That court rejected claimant's argument that U.C. Bulletin No. 871 constituted a regulation[4] which, to be valid, was required to conform with the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1101 *et seq.*[5] The Commonwealth Court majority instead accepted the position urged by the Board, that U.C. Bulletin No. 871 was rather a "statement of policy," and thus not subject to the statutory provisions governing regulations. That court moreover concluded that, as a statement of policy, U.C. Bulletin No. 871 is logically related to the legislative scheme

---

**4.** 45 P.S. § 1102(12) defines a "regulation" as:

... any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency.

**5.** 45 P.S. § 1208 provides:

An administrative regulation or change therein promulgated after the effective date of this act shall not be valid for any purpose until filed by the Legislative Reference Bureau, as provided in Section 409.

It is conceded that the document in question has neither been filed with the Legislative Reference Bureau nor has met the other requirements of the Commonwealth Documents Law.

and operates in a fair and nondiscriminatory fashion, and accordingly affirmed the Board's decision.

In a dissenting opinion, Judge Joseph T. Doyle rejected the majority's conclusion that the bulletin provision constituted merely a statement of policy. He reasoned that the pronouncement in question articulated a binding rule of law, and must rather be considered a regulation. Since the pronouncement clearly did not comply with the Commonwealth Documents Law, Judge Doyle reasoned that it must be deemed ineffective and invalid as a regulation, and urged that the document should not have formed the basis of the decisions of the referee and the Board. We agree with this argument and, accordingly, reverse.

This Court has previously considered the distinction between "statements of policy" and "regulations" in its decision in *Pennsylvania Human Relations Commission v. Norristown Area School District, (Norristown)*, 473 Pa. 334, 374 A.2d 671 (1977). We there held that the Pennsylvania Human Relations Commission's desegregation pronouncements constituted statements of policy rather than regulations since the documents in question established only general guidelines for further consideration, rather than promulgating binding rules of law. In that case, we found persuasive the reasoning of the Court of Appeals for the District of Columbia which stated:

> A properly adopted substantive rule establishes a standard of conduct which has the force of law ... The underlying policy embodied in the rule is not generally subject to challenge before the agency.
>
> A general statement of policy, on the other hand, does not establish a "binding norm" ... A policy statement announces the agency's tentative intentions for the future.

*Norristown*, 473 Pa. at 350, 374 A.2d at 679, *quoting Pacific Gas and Electric Co. v. Federal Power Commission*, 506 F.2d 33, 41 (D.C.Cir.1974).

■ In the instant case it is clear that U.C. Bulletin No. 871 does more than simply offer generalized guidelines, or

articulate general statements of policy. Rather, the standard therein articulated is completely and unequivocally determinative of the issue of how to count a credit week which overlaps two quarters. That determination is made by the numerical expedient of assigning the credit week to whichever quarter not less than four days of the week occur, and the determination remains unchanged even if the work was entirely performed, and wages entirely received, in another quarter. The bulletin pronouncement amounts therefore in every sense to a binding rule of law. Since the document fails to comply with the Commonwealth Documents Law, we agree with claimant that it is invalid as a regulation and cannot dictate a denial of benefits.[6]

Having determined that U.C. Bulletin No. 871 may not be given controlling effect, the question remains whether the decision should be upheld as a valid exercise of the Board's adjudicative function. That question turns on an issue of statutory construction, and requires us to decide whether the Board's adjudication effectuates the legislative intent underlying the definition and application of "credit weeks" as a condition of eligibility.

We have previously articulated the legislative intent underlying financial eligibility requirements as being a means to demonstrate a claimant's genuine attachment to the work force. *See generally Martin v. Unemployment Compensation Board of Review*, 502 Pa. 282, 466 A.2d 107 (1983). We have also consistently recognized the remedial nature of the Unemployment Compensation Law, and have striven to give its provisions broad and liberal construction. *Renne v.*

---

6. The Board, in addition to arguing that the promulgation in question qualifies as a statement of policy, also urges in the alternative that if the instant pronouncement does constitute a regulation, it is an interpretative regulation rather than a legislative regulation, and is therefore not subject to compliance with the Commonwealth Documents Law. *See Uniontown Area School District v. Pennsylvania Human Relations Commission*, 455 Pa. 52, 313 A.2d 156 (1973). Since, however, we held in that case (and appellant concedes) that interpretative regulations depend for their validity solely upon the willingness of a reviewing court to decide that they in fact track a statute's meaning, and since our decision is to the contrary here, we need not resolve that question.

*Unemployment Compensation Board of Review (Renne),* 499 Pa. 299, 453 A.2d 318 (1982); *Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review,* 479 Pa. 324, 388 A.2d 678 (1978). Moreover, this Court has held that, absent a specific disqualification in the Law, a presumption of eligibility attaches to involuntarily unemployed claimants. *Penn Hills School District v. Unemployment Compensation Board of Review, (Penn Hills),* 496 Pa. 620, 437 A.2d 1213 (1981); *Sturdevant v. Unemployment Compensation Board of Review,* 158 Pa.Super. 548, 45 A.2d 898 (1946).

At the time appellant applied for benefits Section 404(c) of the Law, 43 P.S. § 804(c), clearly and unambiguously required that a claimant have a minimum of eighteen (18) credit weeks during his or her base year to be eligible for benefits.[7] The question for our decision is whether the Board in adopting the referee's findings properly determined that the calendar week ending January 3, 1981, could not count as a credit week toward claimant's base year. Section 4(g.1) of the Law, 43 P.S. § 753(g.1) provides as follows:

> "Credit Week" means any calendar week in an individual's base year with respect to which he was paid in employment as defined in this act, remuneration of not less that fifty dollars ($50). Only one credit week can be established with respect to any one calendar week.

Within the above definition are only two explicit limitations. First, a credit week must be a calendar week [8] in which a given claimant was paid in employment not less than fifty dollars. Also, a given calendar week may not be the basis for more than one credit week. Although a minimum dollar amount has been established, it bears noting that no such requirement has been set forth by the General Assembly with respect to a minimum number of days. While the

7. *See* n. 3, *supra.*

8. Section 4(z) of the Law, 43 P.S. § 753(z) defines "week" as any calendar week ending at midnight Saturday.

definition also requires that a given credit week be a "... calendar week in an individual's base year," the statute is silent on exactly what qualifies as such.

Both parties urge a preferred method of allocating a given credit week as between two possible base years in cases of overlap. Analogizing to the Commonwealth Court decisions in *Wooley v. Unemployment Compensation Board of Review*, 71 Pa.Cmwlth. 162, 454 A.2d 224 (1983), and *Pollard v. Unemployment Compensation Board of Review*, 71 Pa.Cmwlth. 257, 454 A.2d 1166 (1983), claimant contends that credit weeks should be counted toward the base year in which wages for the week in question are received. Thus, just as the above cases allocated wages, for earnings purposes, to the calendar quarter in which they are received, claimant would have us treat credit weeks in similar fashion. The Board, on the other hand, urges that the method of allocating a credit week to the base year in which a majority of its days falls is a fair and nondiscriminatory method of allocation. However, we are not persuaded that either method of allocating a credit week to one base year or the other is necessary, or is indicated by the statute. This we hold to be so at least where, as here, a given claimant has in fact both worked and earned the requisite fifty dollar amount during that portion of a calendar week occurring within the base year for which a credit week is sought.

 Unlike the wages portion of the statute, which expressly requires differing treatment for wages earned in one calendar quarter as opposed to those earned in another,[9] the section concerning credit weeks is more in the

---

9. Section 401(a) (*See* n. 3, *supra*) provides as follows:
 Compensation shall be payable to any employe who is or becomes unemployed and who—
 (a) Has, within his base year, been paid wages for employment as required by section 404(c) of this act: Provided, however, that no less than twenty per centum (20%) of the employe's last base year wages have been paid in one or more quarters, other than the highest quarter in such employe's base year.

nature of a single, threshold requirement. That is, unlike the wages requirement, the question concerning credit weeks is answerable with a single numerical figure. Thus, while some method of wage allocation is necessary to accord the different calendar quarters their differing analyses, no such method of allocation is essential to make the credit week determination, provided that the statutory minimum has been met. That being so, and no minimum number of days having been set, we will not read such a requirement or limitation into a statute in which the legislature has failed to mandate such.[10] This, it seems to us, both effectuates the particular legislative intent expressed herein, and, moreover, is in keeping with that settled policy of giving the Unemployment Compensation Law's provisions a broad and liberal construction. *Renne, supra; Penn Hills, supra.*

■ In the instant fact situation, claimant worked six of the seven days of the calendar week December 28, 1980 through January 3, 1981. Notes of Testimony, September 14, 1982 at 4. Moreover, claimant submitted evidence of earnings of $761.78 for that week, including $473.65 in the January 1–3, 1981 period, an amount well in excess of the statutory minimum dollar figure.[11] Since claimant has actually both worked and earned the requisite fifty dollar amount during the January 1–3, 1981 period, consistent with our holding today, we find no valid basis for disqualifying claimant from benefits.

Accordingly, the decision of the Board is reversed and the case is remanded for computation of benefits.

10. The effect of today's holding is to say that no absolute method of allocating a credit week to a base year is mandated by the statute. Rather, it is possible for one calendar week to provide the basis for two distinct credit weeks, attributable to distinct base years. However, we emphasize that under no circumstances can one calendar week yield two credit weeks countable towards the same base year. Such a result is clearly proscribed by the statute.

11. In addition, claimant received his wages for the week in question after the conclusion of the 1980 base year.