555 A.2d 97

Mary J. POOLA, Appellant,

v.

COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 28, 1988.

Decided March 8, 1989.*

* This decision was considered and rendered prior to March 7, 1989.

John Stember, James P. O'Connell, Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for appellant.

James Bradley, Asst. Counsel, Unemployment Compensation Bd. of Review, Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

STOUT, Justice.

This is an appeal from the affirmance by the Commonwealth Court of the denial of benefits under the Unemployment Compensation Act [Act], Pa.Stat.Ann. tit. 43, §§ 751–882 (Purdon 1964 & Purdon Supp.Pamph.1988). The benefits were denied on the theory that Appellant lacked the qualifications required to secure compensation under section 801(a) of the Act which provided, among other things,

that the claimant meet the financial eligibility requirements of section 804(c) of the Act.[1]

Appellant, Mary J. Poola, had been an employee of the Beaver County Job Training Partnership Agency for over seven years. In October 1982, Appellant was laid off. On October 22, 1982, her employer paid her a lump sum of $2,026.00. She subsequently received unemployment compensation benefits for one year and, on October 2, 1983, she filed a claim for benefits for a second year establishing July 1, 1982, to June 30, 1983, as the base year period. Appellant's base year, therefore, consisted of the last two quarters of 1982 and the first two quarters of 1983 with earnings for the entire fourth quarter of 1982 having been paid in a lump sum. At the hearing before the Referee, the employer explained the lump sum as follows:

Q. Could you explain this breakdown that we have marked as Exhibit Number Six?

A. Yes, what we did was give them two weeks a sort of like severance pay after the date of their termination. Like she terminated on the 4th and then we gave them the next two weeks as severance pay. And they were paid for any vacation that they had already accumulated and she had three weeks. And then we paid them for accrued vacation from the point and time of their anniversary until their termi-

1. Section 801(a) of the Act provides in pertinent part:
   Compensation shall be payable to any employe who is or becomes unemployed, and who—
   (a) Has, within his base year, been paid wages for employment as required by section [804(c)] of this act ...
   At the time material to this case, section 804(c) provided in pertinent part that such wages must have been earned during eighteen to twenty-three "credit weeks" during a claimant's "base year." Section 804(c) has been amended to require sixteen credit weeks.
   A "credit week" is defined in section 753(g.1) as:
   any calendar week in an individual's base year with respect to which he was paid in employment as defined in this act, remuneration of not less than fifty dollars ($50). Only one credit week can be established with respect to any one calendar week.
   Section 753(a) of the Act defines "base year" to mean: " ... the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year."

nation date, their lay-off date which came out to 43 and three-quarters hours which is a little over a week.

Q. Are you saying that she had three weeks of accumulated vacation?

A. Yes, she had already worked for that.

Q. And she had one week accrued vacation.

A. Right and then she got sick time and her comp time. And all that was paid, I have a pay date of October 22nd.

Q. Alright [sic] anything else that you can add to this?

A. No, that's [sic].

Q. That was all paid in one check, a lump sum payment.

A. Right[.]

Q. So the two weeks continuation that was severance pay. That's on the employer's. That's how the employer classified it.

A. I don't think they ever classified it as severance, you know, as such but they were given two weeks pay.

Q. But they didn't work those two weeks.

A. No[.]

N.T. 12–5–83 at 4–5.

Appellant testified that she always took one week of vacation in May and one week at Thanksgiving, *id.* at 3, and that her employer permitted the scheduling of. vacations with twenty-four hours advance notification. *Id.*

■ The sole issue before the Referee was whether Appellant's unscheduled vacation weeks could be computed as credit weeks for purposes of determining benefit eligibility. The Referee allowed thirteen credit weeks for the thirteen weeks of work in the third quarter of 1982 but computed only one credit week in the fourth quarter of 1982 after making a finding of fact that: "Claimant did not have any particular weeks of vacation scheduled at the time of her separation from work." [2] Referee's Decision at 1. Accord-

2. The Referee made four other findings of fact:

ing to the Referee's calculations, Appellant had only fourteen weeks in her base year instead of the requisite eighteen weeks. Appellant, however, contests this computation and claims that she should have been credited four weeks for the final quarter of 1982. We agree and, therefore, we reverse the decision of the Commonwealth Court.

■ In support of his allowance of only one credit week for the accrued, but unscheduled, four-week vacation, the Referee reasoned:

Under the ... definition of "credit week" claimant has 14 such weeks in her base year. This is insufficient to qualify her for benefits under the provisions of section [804(c)] of the Law. Claimant here argues that the lump sum payment she received should be counted for credit weeks. The Referee recognizes claimant's argument that if her lump sum payment was alloctd over a four-week period it would then allow her to have credit for 18 weeks of wages. In the opinion of the Referee the claimant's request that the lump sum vacation pay allocated to the fourth quarter of 1982 will entitle claimant only [to] one credit week of wages. Under these circumstances claimant cannot be determined financially eligible under the provisions of Section [804(c)] of the Law.

*Id.* There is no statutory basis for this method of computation. *Unemployment Compensation Bulletin No. 871, Supp. No. 8B,* dated April 26, 1983, contains the following statement which is designated "Policy:"

If no pre-arranged vacation pay period was scheduled by either the claimant or employer and approved by the employer prior to the last day of work, the claimant's

1. Claimant filed an Application for benefits effective October 2, 1983, and established a base year period from July 1, 1982 to June 30, 1983.
2. During her base year claimant had total base year wages of [$5,273] with high quarter wages of $3,247.
3. Claimant, during said base year, worked 14 calendar weeks in which she was paid remuneration in excess of $50.00 per week.
4. Claimant received four weeks of vacation pay in a lump sum payment on October 22, 1982.

Referee's Decision at 1.

vacation pay shall be considered to represent payment for accrued vacation leave. In this case, one credit week would be assignable to the week in which the vacation payment was made to the claimant. If the employer chooses to make this payment in several installments in accordance with his/her customary pay period, *only one credit week is assignable* to the first pay period in which the vacation payment was made.

*Lopata v. Unemployment Compensation Board of Review*, 507 Pa. 570, 493 A.2d 657 (1985), however, taught that this *Bulletin* provision must be considered a regulation rather than merely a statement of policy. As such it does not comply with the Commonwealth Document Law [Document Law], Pa.Stat.Ann. tit. 45, §§ 1101–1602 (Purdon Supp.Pamph.1988),[3] and it may not form the basis for Referee or Board decisions. It cannot, therefore, dictate the denial of benefits.

As we did in *Lopata,* we next consider whether the decision here may be upheld as a valid exercise of the Board's adjudicative function. This requires a determination of whether the Board's adjudication effectuates the legislative intent underlying the definition and application of "credit weeks" as a condition of eligibility. We are guided by the wisdom of Mr. Justice McDermott who, in *Lopata,* wrote:

> We have previously articulated the legislative intent underlying financial eligibility requirements as being a

---

**3.** 45 Pa.Stat.Ann. § 1102(12) defines a "regulation" as:

... any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency, or prescribing the practice or procedure before such agency.

45 Pa.Stat.Ann. § 1208 provides:

An administrative regulation or change therein promulgated after the effective date of this act shall not be valid for any purpose until filed by the Legislative Reference Bureau, as provided in section 409.

(footnotes omitted).

It is conceded that the document in question has neither been filed with the Legislative Reference Bureau nor has met the other requirements of the Document Law.

means to demonstrate a claimant's genuine attachment to the work force. *See generally Martin v. Unemployment Compensation Board of Review*, 502 Pa. 282, 466 A.2d 107 (1983). We have also consistently recognized the remedial nature of the Unemployment Compensation Law, and have striven to give its provisions broad and liberal construction. *Renne v. Unemployment Compensation Board of Review, (Renne)*, 499 Pa. 299, 453 A.2d 318 (1982); *Gladieux Food Services, Inc. v. Unemployment Compensation Board of Review*, 479 Pa. 324, 388 A.2d 678 (1978). Moreover, this Court has held that, absent a specific disqualification in the Law, a presumption of eligibility attaches to involuntarily unemployed claimants. *Penn Hills School District v. Unemployment Compensation Board of Review, (Penn Hills)*, 496 Pa. 620, 437 A.2d 1213 (1981); *Sturdevant v. Unemployment Compensation Board of Review*, 158 Pa.Super. 548, 45 A.2d 898 (1946).

507 Pa. at 576–577, 493 A.2d at 661.

Neither the Referee's determination, nor the affirmance thereof by the Board and the Commonwealth Court, effectuated the legislative intent underlying the definition and application of "credit week" as a condition of eligibility.[4] Such a construction of the Act is neither broad nor liberal. *See Lopata*, 507 Pa. at 579, 493 A.2d at 662. Since the Act is remedial, so narrow a construction cannot stand. More-

---

**4.** The Commonwealth Court affirmed the Board's decision, in finding that Appellant did not preschedule any vacation time and that the pertinent Board regulation is found in 34 Pa.Code § 65.94. The regulation provides:

> *For purposes of this Subchapter,* the term "vacation period" shall mean the following:
> (1) A period designated or approved by the claimant's employer as his vacation.
> (2) The period of any plant-wide or departmental closing for vacation except to the extent that the employer of the claimant has granted him a separate vacation period in substitution, in whole or in part, for the general shutdown.

(emphasis added). This regulation by its terms is applicable to Subchapter C of the Act which involves the allocation of vacation pay to arrive at a weekly rate of compensation and is not related to the determination of financial eligibility.

over, there are only two statutory limitations in the definition of a "credit week." It must be a calendar week in which a claimant is paid in employment not less than fifty dollars and only one credit week can be established with respect to any one calendar week. There is nothing in the Act which directs that the allocation of credit weeks for vacation time depends on whether the vacation was scheduled or unscheduled.

We hold, therefore, that for every week of vacation time, scheduled or unscheduled, earned during a base year, a "credit week" must be allocated. A contrary holding would not comport with reason, with the letter of the law, or with its underlying policy. *See Pane v. Unemployment Compensation Board of Review,* 95 Pa.Commw. 40, 504 A.2d 958 (1986) (Applicability of an offset provision cannot properly be predicated upon when an employee schedules his or her vacations. Such result has the effect of needlessly penalizing certain employees and is impermissibly arbitrary.)

The Order of the Commonwealth Court is reversed and the case is remanded for the computation of benefits.