United States Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 12, 1984, before Judges WILLIAMS, JR., CRAIG and COLINS, sitting as a panel of three.

*James T. Carney,* for petitioner.

*John Patrick Lydon, Lestitian and Lydon, P.C.,* for respondents, Carroll, Watson, Brounce and Garsteck.

OPINION BY JUDGE WILLIAMS, JR., June 29, 1984:

The United States Steel Corporation (petitioner) petitions for review of the rulings of the Unemployment Compensation Board of Review (Board) holding that four former employees[1] (claimants) had filed valid Applications for Benefits (AB) after the termination of a preceding benefit year[2] under Section 4(w)(2)[3] of the Act.

The petitioner contends that the Board has misinterpreted Section 4(w)(2) in these cases and the question before us is whether, and to what extent, vacation pay can be used to satisfy the test set forth therein.

Section 4(w)(2) provides:

An application for benefits filed after the termination of a preceding benefit year by an individual shall not be considered a Valid Application for Benefits within the meaning of this subsection, unless such individual has, subsequent to the beginning of such preceding benefit year and prior to the filing of such application *worked and earned wages,* whether or

---

[1] James W. Garsteck, Board Decision No. B-215321, No. 802 C.D. 1983; Robert N. Brounce, Board Decision No. B-215317, No. 803 C.D. 1983; Francine Carroll, Board Decision No. B-216607, No. 971 C.D. 1983; Shirley W. Watson, Board Decision No. B-217016, No. 1068 C.D. 1983.

These cases were consolidated on appeal on the motion of the petitioner by order of this Court dated June 27, 1983.

[2] *See* Section 4(b) of the Unemployment Compensation Act (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. Section 753(b), for the statutory definition of "benefit year."

[3] 43 P.S. Section 753(w)(2).

not such work is in "employment" as defined in this act in an amount equal to or in excess of six (6) times his weekly benefit rate in effect during such preceding benefit year. (Emphasis added.)

The instant controversy centers on the meaning of the words emphasized above. The petitioner argues that even though vacation pay may have been received during the period between the dates of the two AB's, it cannot be utilized as "earned wages" under Section 4(w)(2) unless the work from which it was earned was performed during that period. The intervenors, and the Board[4] in its rulings, take the position that vacation pay "paid" or "received" in the critical period may be so used, if the claimant has performed some work in that period.

Initially, we note that the petitioner and the intervenors do not disagree that vacation pay can be considered to be "wages"[5] for the purposes of Section 4(w)(2) and the Appellate Courts of the Commonwealth have held that, under the Act, vacation pay can be used as wages or remuneration for other unrelated purposes. *Buss v. Unemployment Compensation Board of Review*, 487 Pa. 610, 410 A.2d 779 (1980) (legislative intent was not to treat vacation pay as remuneration that would negate the status of being "unemployed" under Section 4(u) of the Act, 43 P.S. Section 753(u), but rather to treat accumulated annual vacation pay as merely a factor in computing benefit amounts under Section 404(d), 43 P.S. Section 804(d)); *Claypoole v. Unemployment Compensation Board of Review*, 66 Pa. Commonwealth Ct.

---

[4] Although this is a matter of first impression, the Board did not participate in this appeal.

[5] *See* Section 4(x) of the Act, 43 P.S. §753(x) for the statutory definition of "wages."

363, 444 A.2d 828 (1982). In *Claypoole,* we relied on *Dickson v. Unemployment Compensation Board of Review,* 205 Pa. Superior Ct. 468, 211 A.2d 51 (1965) to distinguish the use of vacation pay under the Act to determine whether a claimant was unemployed from its use to determine whether a claimant was paid qualifying wages in the base year. As the *Dickson* court held "[t]he allocation of vacation pay to determine whether or when a claimant is unemployed *does not relate to or control* the determination of whether claimant was paid wages during his base year." *Id.* at 471, 472, 211 A.2d at 53 (emphasis added) (citations omitted). Therefore, it is clear that the use of vacation pay under Section 4(w)(2) is not dependent upon its uses for other purposes under the Act.

The operative language here is "worked and earned wages" and in order to satisfy Section 4 (w)(2) this activity must take place between the date of the first AB and the date of the succeeding AB. As we have noted, the Board, in reaching its conclusions, read this language as permitting the filing of a valid AB after a preceding benefit year if the claimant had worked and was paid or received sufficient wages, from any source, during the relevant period. However, such an interpretation is inconsistent with our recent holding in *Wooley v. Unemployment Compensation Board of Review,* 71 Pa. Commonwealth Ct. 162, 454 A.2d 224 (1983), where we rejected the argument that if wages were "earned" during the base year, they should be included in the computation of base-year wages. Interpreting the word "paid" as it is used in Section 4(x) consistently with *Claypoole,* we held that " '[p]aid' cannot mean 'earned.' Had the legislature intended wages to include income earned but not received, that language would have been used." *Id.* at 164, 454 A.2d at 225.

Conversely, in Section 4(w)(2) the legislature specifically used the word "earned," not "paid." Therefore, consistent with prior holdings, we cannot read "earned" as meaning "paid" or "received."[6]

Accordingly, vacation pay may be used as "wages" for the purposes of Section 4(w)(2) only if such vacation pay was due to work which was performed within the period between the first AB and the succeeding AB.

Applying this rule to the instant cases, we conclude that claimant Garsteck's September 19, 1982 AB cannot be held to be valid. Although the referee found that he received the vacation pay at issue within the critical period, this finding was contrary to Garsteck's testimony, the only evidence in the record on this point.[7] Consequently, Garsteck's earnings from work performed between the two AB dates are $258.00, which is insufficient to validate his second AB under Section 4(w)(2). Therefore, we will re-

---

[6] Section 1921 of the Statutory Construction Act of 1972, 1 Pa. C. S. Section 1921, provides in pertinent part:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

[7] At his hearing, the following exchange occurred between claimant Garsteck and the referee.

QR Well, when did you receive vacation pay?

AC March of '81.

QR That was *before* you filed your first claim?

AC *Right.*

QR I thought you received it after you filed your first claim, you know, but you received it before you filed your claim.

AC Right. (Emphasis added.)

verse the ruling below and hold that Garsteck's September 19, 1982 AB is invalid.

Claimant Brounce was found to have last worked for the petitioner prior to filing his October 4, 1981 AB. Consequently, the vacation pay which he received from the petitioner in June and July, 1982 could not have been earned during the period between his October 4, 1981 AB and his October 3, 1982 AB. Therefore, his earnings from work performed within the critical period, $297.00 from the Courier Times, are insufficient to validate his October 3, 1982 AB. Accordingly, we will reverse the ruling below and hold that Brounce's October 3, 1982 AB is invalid.

Claimants Carroll and Watson both performed some work for the petitioner during the critical period.

Carroll earned $1049.44, which is $0.56 less than the necessary amount under Section 4(w)(2). She also received $1096.40 in vacation pay in July, 1982 from the petitioner. Therefore, if at least $0.56 of her vacation pay can be attributed to the work which she performed for the petitioner between November 1, 1981 and October 31, 1982, the dates of her AB's, her October 31, 1982 AB may be held to be valid. Watson worked for the petitioner between November 22, 1981 and November 21, 1982, the dates of her AB's, and earned $944.00. The Board found her to have received $895.00 in vacation pay from the petitioner during the same period.[8] Consequently, if $106.00 or

---

[8] The record in Watson's case contains a copy of Form UC-45, designated as the Employer's Separation Information. On the reverse thereof, the employer indicated that Watson was paid vacation pay in the amount of $1824.50 for the periods from May 16, 1982 through May 29, 1982 and from July 25, 1982 through August 7, 1982. There is no independent evidence in the record which supports the amount of vacation pay found by the Board, which Watson appears to have disputed at the hearing.

more of her vacation pay resulted from the work which she performed for the petitioner within the critical period, her November 21, 1982 AB may be valid.

Therefore, we will vacate the Board's orders in Carroll and Watson's cases and remand the records thereof to the Board for further fact-finding and further hearings, if necessary, consistent with this opinion.

## ORDER IN 802 C.D. 1983

AND Now, this 29th day of June, 1984, the order of the Unemployment Compensation Board of Review, Board Decision No. B-215321, is hereby reversed and James M. Garsteck's September 19, 1982 Application for Benefits is invalid.

## ORDER IN 803 C.D. 1983

AND Now, this 29th day of June, 1984, the order of the Unemployment Compensation Board of Review, Board Decision No. B-215317, is hereby reversed and Robert N. Brounce's October 3, 1982 Application for Benefits is invalid.

## ORDER IN 971 C.D. 1983

AND Now, this 29th day of June, 1984, the order of the Unemployment Compensation Board of Review, Board Decision No. B-216607, concerning Francine Carroll's October 31, 1982 Application for Benefits, is hereby vacated and the record thereof is remanded to the Board for further proceedings consistent with this Opinion.

Jurisdiction relinquished.

## ORDER IN 1068 C.D. 1983

AND Now, this 29th day of June, 1984, the order of the Unemployment Compensation Board of Review, Board Decision No. B-217016 concerning Shirley W.

Watson's November 21, 1982 Application for Benefits, is hereby vacated and the record thereof is remanded to the Board for further proceedings consistent with this Opinion.

Jurisdiction relinquished.