625 A.2d 173

Marvella P. LEHR, Petitioner,

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 18, 1992.

Decided May 3, 1993.

Thomas W. Scott, for petitioner.

No appearance for respondent.

William C. Adrian Boyle, for intervenor South Eastern School Dist.

Before DOYLE, COLINS and KELLEY, JJ.

COLINS, Judge.

Marvella P. Lehr (Lehr) petitions for review of the May 22, 1992 order of the Unemployment Compensation Board of Review (Board), which order affirmed the referee's denial of benefits. The referee, according to the Board, had concluded correctly that Lehr did not meet the "work and earn wages" requirement of Section 4(w)(2) of the Unemployment Compensation Law (Law).[1]

By letters dated February 2, 1990, the South Eastern School District (School District) suspended Lehr from her teaching duties at Kennard–Dale High School, pursuant to Section 1122 of the Public School Code of 1949,[2] for, *inter alia,* incompetency. The School District based its charge of incompetency upon three consecutive unsatisfactory evaluations which Lehr received on February 2, 1989, June 6, 1989, and January 24, 1990.[3] Shortly after her suspension commenced,

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 753(w)(2), which states:
   > An application for benefits filed after the termination of a preceding benefit year by an individual shall not be considered a Valid Application for Benefits within the meaning of this subsection, unless such individual has, subsequent to the beginning of such preceding benefit year and prior to the filing of such application, *worked and earned wages,* whether or not such work is in 'employment' as defined in this act in an amount equal to or in excess of six (6) times his weekly benefit rate in effect during such preceding benefit year. (Emphasis added.)

2. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1122.

3. The record in this matter is internally inconsistent with regard to the dates of Lehr's unsatisfactory evaluations. The dates set forth in the text, February 2, 1989, June 6, 1989, and January 24, 1990, are contained in the February 2, 1990 letter from the President of the School Board to Lehr, which letter advised her of the charges against

Lehr filed her first application for benefits.[4]  Lehr also filed a grievance, asserting that the School District had suspended her in violation of the collective bargaining agreement between it and its teachers.  Lehr asserted that the collective bargaining agreement required that a "Board of Review" be established to review, prior to her suspension, her unsatisfactory evaluations.

On December 7, 1990, the arbitrator determined that Lehr had been suspended without the due process afforded by the collective bargaining agreement.  He, therefore, entered an award requiring that she be reinstated, with back pay and benefits, until the Board of Review was convened, and it determined whether her unsatisfactory evaluations were correct.  The School District reinstated Lehr on December 21, 1990, and she received bi-weekly pay checks from the School District until September, 1991.  Although Lehr was being paid and was available for work, the School District did not assign work to her.  In August, 1991, the Board of Review issued its decision that Lehr's third evaluation was incorrect.  By letter dated September 12, 1991, the School District again suspended Lehr without pay based on the two correct, unsatisfactory evaluations.  The School District's letter, signed by the Superintendent of Schools, stated:

> With the support of the Board of Review's ruling on the 'correctness' of two unsatisfactory ratings coupled with the other charges outlined in my letter to you of February 2, 1990, you are again *suspended from your teaching duties.* This suspension will be without pay and will continue until a hearing before an arbitrator.  (Emphasis added.)

her.  According to the arbitrator's decision, Lehr was evaluated on February 28, 1989, June 15, 1989, and January 25, 1990.  According to the Board of Review's report, Lehr was evaluated on February 2, 1989, June 15, 1989, and January 24, 1990.

4.  Lehr's first application for benefits was denied by the Office of Employment Security.  That denial was affirmed by both the referee and the Board.  Lehr petitioned this Court for review of the denial of benefits, but she discontinued that appeal after entry of the arbitrator's award on December 7, 1990.

Shortly thereafter, Lehr filed a second application for unemployment compensation benefits. The Office of Employment Security denied Lehr's application for benefits, and the referee affirmed, making the following findings of fact.

1. The claimant filed an unemployment compensation claim with an effective date of March 18, 1990, thereby establishing a weekly benefit rate of $280.

2. The claimant filed a second unemployment compensation claim with an effective date of October 6, 1991.

3. The claimant did not perform any services for the employer or any other employer after her suspension of approximately February 2, 1990.

4. The claimant received payments as a result of an arbitration award issued in approximately September, 1990 [sic].

5. The Office of Employment Security denied benefits to the claimant under Section 4(w)(2) of the Law.

The referee reasoned that Lehr had not satisfied the work and earn wages requirement of Section 4(w)(2) of the Law, 43 P.S. § 743(w)(2), because Lehr did not perform any services for the School District. The Board, after reviewing the record and the parties' briefs, concluded that the referee's decision was proper. It, therefore, affirmed the referee's decision.

Lehr timely appealed to this Court and presents the following issue for our review.

Has petitioner Lehr satisfied the requirements for filing a valid application for benefits as set forth in Section 4(w)(2) of the [Law], 43 P.S. § 753(w)(2), which require her to work and earn at least six times her weekly benefit rate in order to re-establish eligibility for benefits?

"Our scope of review is limited to whether the Board committed an error of law, violated constitutional rights, or whether the findings of fact are supported by substantial evidence." *Classic Personnel v. Unemployment Compensation Board of Review,* 151 Pa.Commonwealth Ct. 423, 426 n. 4, 617 A.2d 66, 68 n. 4 (1992).

Lehr argues that she has met the work and earn wages requirement of Section 4(w)(2) of the Law, 43 P.S.

§ 753(w)(2), because she was reinstated as an employee of the School District, she was paid bi-weekly from December 21, 1990 until September, 1991, and she was available for work. According to Lehr, the fact that the School District did not assign work to her should not defeat her claim for benefits. The School District counterargues that Lehr has not satisfied the work and earn wages requirement of Section 4(w)(2) of the Law, because she neither worked nor earned wages. According to the School District, the pay Lehr received pursuant to the arbitrator's award related back to her February 2, 1990 suspension and was, therefore, "back pay." Back pay cannot, according to the School District, satisfy the work and earn wages requirement of Section 4(w)(2) of the Law, 43 P.S. § 753(w)(2), because it is not earned during the relevant time period, that time between the two applications for benefits. *See Joyce v. Unemployment Compensation Board of Review,* 120 Pa.Commonwealth Ct. 247, 548 A.2d 387 (1988).

With regard to interpretation of the Law, the Pennsylvania Supreme Court has stated:

> In *Penn Hills School District v. The Board of Review,* 496 Pa. 620, 437 A.2d 1213 (1981), this Court reaffirmed long-standing principles of statutory construction with respect to the Unemployment Compensation Law. We recognized the remedial purposes of the [Law] to insure that employees who become involuntarily unemployed are provided some semblance of economic security. Such remedial legislation must always be interpreted so that the benefit sections are liberally and broadly construed to alleviate the distress of the involuntarily unemployed. More recently, in *Lopata v. The Unemployment Compensation Board of Review,* 507 Pa. 570, 493 A.2d 657 (1985), we restated the proposition that unless the provisions of the [L]aw unmistakeably [sic] compel the conclusion that benefits are to be denied, a remedy is to be found consonant with the purposes of the [L]aw, i.e., the granting of compensation.

*Cugini v. Unemployment Compensation Board of Review,* 511 Pa. 264, 272–73, 512 A.2d 1169, 1173 (1986). Additionally, this Court has stated:

[W]e note that the [L]aw is remedial and humanitarian in purpose and its benefits and objectives are not to be frustrated 'by slavish adherence to technical and artificial rules.' *Unemployment Compensation Board of Review v. Jolliffe,* 474 Pa. 584, 586, 379 A.2d 109, 110 (1977). Furthermore, to penalize the Claimant on the basis of impropriety of others would be in derogation and frustration of the primary objective of the Law to insure against 'unemployment and the spread of indigency.' *Id.* at 587, 379 A.2d [at] 110.

*Gonzalez v. Unemployment Compensation Board of Review,* 97 Pa.Commonwealth Ct. 633, 634, 510 A.2d 864, 865 (1986), *appeal dismissed as improvidently granted,* 517 Pa. 310, 535 A.2d 1051 (1988). In *Gonzalez,* we reversed an order of the Board which denied benefits pursuant to Section 401(d)(1) of the Law, 43 P.S. § 801(d)(1). The Board had concluded that Gonzalez was not "able to work and available for suitable work," as required by Section 401(d)(1). While receiving benefits, Gonzalez was incarcerated for a month, but he was freed when the police determined that they had arrested the wrong person. Noting the Law's remedial and humanitarian purposes, we reversed the Board's denial of benefits, because Gonzalez was physically able to work and would have been available for work but for his illegal incarceration.

In this case of first impression, we agree with Lehr that she met the work and earn wages requirement of Section 4(w)(2) of the Law, 43 P.S. § 753(w)(2). Our analysis in this matter is similar to our analysis in *Gonzalez.* We will not permit the School District to defeat Lehr's claim for unemployment compensation benefits by arguing that she did not perform services, i.e., work, for the School District, when the School District itself made the choice not to assign work to Lehr, and when Lehr testified that she was available for work. Pursuant to the arbitrator's award, Lehr had been reinstated and was paid as a teacher bi-weekly from December 21, 1990 through September, 1991. (The School District itself, in its September 12, 1991 suspension letter stated that it was again suspending Lehr from her teaching duties.) Mindful of the Law's remedial and humanitarian purposes, we will not slav-

ishly adhere to the technical meaning of "work and earn wages," thereby permitting the School District to defeat Lehr's claim for benefits by paying her salary as a teacher but refusing to permit her to work.

Accordingly, the order of the Unemployment Compensation Board of Review is reversed.

## ORDER

AND NOW, this 3rd day of May, 1993, the order of the Unemployment Compensation Board of Review is reversed.