Ulysses COATES, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted April 4, 1996.
Decided May 20, 1996.

Ulysses Coates, pro se, Petitioner.

Randall S. Brandes, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for Respondent.

Before COLINS, President Judge, FLAHERTY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Ulysses Coates (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) which reversed the decision of the referee and found Claimant ineligible for benefits under Section 404 of the Unemployment Compensation Law (Law).[1] We reverse.

Claimant was employed by the Philadelphia Naval Shipyard (Employer) for more than twenty-four years. Claimant's application for benefits, effective July 9, 1995, estab-

lished a base year from April 1, 1994 to March 31, 1995.[2] During the second quarter of 1994, Claimant received a lump sum payment from Employer of $26,024.00, representing payment for accrued annual and sick leave. The Office of Employment Security (OES) denied Claimant's application for benefits because Claimant was not paid at least 20% of his wages outside the calendar quarter in which he had the highest wages. Section 401 of the Law, 43 P.S. § 801.

Claimant appealed and the case was assigned to a referee. The record reflects that Employer's representative was present in the waiting area at the time of the hearing, but informed the referee that she did not intend to participate. Claimant appeared without counsel and testified that the lump sum he had received should have been paid to him on a bi-weekly basis instead, as was Employer's usual practice. Claimant stated that, had he been paid every two weeks until his accrued leave pay was exhausted, he would have received payments through the last quarter of his base year and would be eligible for benefits.

Claimant testified that he became sick in 1993 and filed a claim for workers' compensation benefits. He stated that, after the workers' compensation claim was denied in the early months of 1994, he was put on "leave" status. Claimant expressed his belief that Employer's arbitrary payment of a lump sum distribution of Claimant's accrued leave was related to Claimant's filing of an unrelated complaint against Employer.

■ Claimant testified that, according to Employer's customary practice, whenever an employee is in a non-work status on approved leave, money is deducted out of the employee's accrued leave account as it is used and paid bi-weekly. Claimant also presented documentation evidencing the amount

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 804.

2. "Base year" means the first four of the last five completed calendar quarters immediately preceding the first day of a claimant's benefit year;

the "benefit year" is the fifty-two week period beginning the day the claimant's application for benefits is filed. Section 4 of the Law, 43 P.S. § 753.

of annual and sick leave accrued as of October of 1993.[3]

The referee reversed the OES' determination. The referee found that Employer should have paid Claimant's leave wages bi-weekly from April, 1994 through March, 1995 and that Employer paid the amount in a lump sum in an attempt to resolve a dispute. (Referee's Findings of Fact Nos. 4, 5, 6.) The referee then applied the Board's administrative regulation which provides that "[w]ages *shall be considered to be paid* on the day on which amounts definitely assignable to a payroll period are generally paid by the employer ...." and concluded that Claimant's wages should be treated as though they were paid beginning on April 1, 1994 and continuing thereafter bi-weekly. 34 Pa.Code § 61.3(a) (emphasis added). Thus, the referee determined that Claimant was financially eligible for benefits and calculated and set forth Claimant's weekly rate and maximum benefit amount.

■ Employer filed a timely appeal to the Board.[4] In unemployment compensation cases, the Board is the ultimate fact-finding body, empowered to determine the credibility of witnesses and the weight to be accorded evidence. *Metropolitan Edison Co. v. Unemployment Compensation Board of Review,* 146 Pa.Cmwlth. 648, 606 A.2d 955 (1992). Here, the Board's decision included the following Findings of Fact:

4. Claimant was out ill starting in 1993 and applied for worker's [sic] compensation.

5. In the 2nd quarter of 1994, claimant requested his claim be converted to a leave request.

6. Claimant was paid $26,024 of sick leave pay in the second quarter of 1994 based on his request to change his worker's [sic] compensation claim to sick leave.

7. Claimant's sick leave was paid when requested.

(Board's Decision, p. 1.) The Board issued no findings with respect to Claimant's credibility or to Employer's usual procedure for

---

3. Claimant asked the referee if it would be possible to have Employer explain why it had deviated from its customary practice and had paid his accrued leave as a lump sum. The referee stated that he was not going to wait for Employer to send any information, because Employer had received notice of the hearing and had expressed an intent not to participate. The referee told Claimant that the notice of the hearing which Claimant received gave Claimant the right to subpoena Employer to appear at the hearing, but that Claimant had not exercised that right. However, the referee failed to inform Claimant that he could have requested a continuance of the hearing, 34 Pa.Code § 101.24, in order to secure and present testimony from Employer. *See Sievers v. Unemployment Compensation Board of Review,* 124 Pa.Cmwlth. 52, 555 A.2d 260 (1987), *aff'd,* 520 Pa. 83, 551 A.2d 1057 (1989) (where employer's testimony is crucial, such testimony should be compelled).

Where, as here, a party is not represented by counsel, the referee before whom the hearing is being held "should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of his duties." 34 Pa.Code § 101.21. The referee has a responsibility to assist a pro se claimant at a hearing so that the facts of the case necessary for a decision may be adequately developed. *Bennett v. Unemployment Compensation Board of Review,* 66 Pa. Cmwlth. 455, 445 A.2d 258 (1982).

Although not an issue on appeal, we wish to highlight the importance of the referee's responsibility under 34 Pa.Code § 101.21. Here, Claimant clearly expressed a desire to obtain evidence from Employer and, after careful analysis of the law, we have determined that such evidence would have aided in the development of necessary factual determinations, i.e., the question of what the lump sum received by Claimant actually represented and the manner in which such a payment would generally be made.

4. Employer sent a letter to the Board attached to its petition for review. (See Record, item 9.) Employer asserts in this letter that, after Claimant's workers' compensation claim was controverted, his status for the period from April 1993 through April 1994 was changed (retroactively) to a leave without pay status. Thereafter, according to Employer, Claimant submitted a sick leave request to cover that period and received the lump sum payment as sick leave pay due for that period. Employer's letter fails to explain why Claimant was paid this additional compensation for the same period during which, according to Employer's assertions, Claimant received workers' compensation benefits.

Although included in the certified record, this letter is uncorroborated hearsay and is not competent evidence upon which the Board could properly base findings of fact. *Walker v. Unemployment Compensation Board of Review,* 27 Pa. Cmwlth. 522, 367 A.2d 366 (1976). We note the letter's inclusion in the record because it appears that the Board based its findings of fact on the assertions contained therein.

paying accrued leave, nor did the Board discuss the bureau regulation relied upon by the referee.

The Board concluded that Claimant was financially ineligible under Section 404 of the Law because (1) Claimant's lump sum payment consisted of sick leave pay which is specifically excluded from "wages" as defined by Section 4(x) of the Law, 43 P.S. § 753(x) and (2) even if the lump sum were considered wages, the payment was properly assigned to the second quarter of 1994, as that is when it was demanded.

■ On appeal to this Court,[5] Claimant, proceeding pro se, argues that the Board's findings and conclusions are erroneous and are unsupported by the record. We agree.

■ As a preliminary matter, we must first review the Board's conclusion that Section 4(x)(8) of the Law, 43 P.S. § 753(x)(8), mandates the exclusion of Claimant's accrued sick leave from the calculations of Claimant's base year wages. Section 4(x) of the Law defines "wages" as "all remuneration ... paid by an employer to an individual with respect to his employment...."[6]

The Board relies on *Pennsylvania Electric Co. v. Unemployment Compensation Board of Review*, 73 Pa.Cmwlth. 258, 458 A.2d 626 (1983), asserting that this decision reflects well-settled law that vacation and sick pay are not includable for the purpose of calculating a claimant's base year wages. Actually, the issue in *Pennsylvania Electric* was whether the receipt of vacation and sick pay following a period of employment rendered the claimant ineligible for benefits under Section 4(u) of the Law, 43 P.S. § 753(u). The *Pennsylvania Electric* court noted that the claimant was entitled to the sick pay based upon accumulated past service and that such payment was not made with respect to the

weeks in which her employment status was at issue. Accordingly, the court ruled that, with regard to Section 4(u) of the Law, the receipt of vacation and sick pay will not negate a claimant's status as unemployed for purposes of determining eligibility for benefits.

However, the decisions in *Pennsylvania Electric* and other cases involving Section 4(u) of the Law have no relevance to the present inquiry; an analysis of vacation and sick payments to a claimant for the purpose of determining his status as unemployed has no relevance to an analysis of those payments for the purpose of determining the claimant's base year wages. *Buss v. Unemployment Compensation Board of Review*, 487 Pa. 610, 410 A.2d 779 (1980); *United States Steel Corp. v. Unemployment Compensation Board of Review*, 83 Pa.Cmwlth. 465, 479 A.2d 16 (1984); *Claypoole v. Unemployment Compensation Board of Review*, 66 Pa.Cmwlth. 363, 444 A.2d 828 (1982).

We therefore look to cases which involve an analysis under Section 4(x) of the Law and specifically Subsection 4(x)(8), which excludes from the definition of wages "any payment on account of sickness or accident disability or medical or hospitalization expenses in connection with sickness or accident disability...." With respect to this specific issue, our review of the cases reveals that the courts continue to rely on the analysis set forth in *Karamanian v. Unemployment Compensation Board of Review*, 46 Pa.Cmwlth. 163, 405 A.2d 1364 (1979). *See*, e.g., *McAnallen v. Unemployment Compensation Board of Review*, 86 Pa.Cmwlth. 77, 483 A.2d 1057 (1984); *Swackhammer v. Unemployment Compensation Board of Review*, 86 Pa.Cmwlth. 293, 484 A.2d 851 (1984), *appeal dismissed*, 509 Pa. 627, 506 A.2d 898 (1986).

---

5. Where, as here, the burdened party is the only party to present evidence and does not prevail before the agency, our scope of review is whether the agency erred as a matter of law or capriciously disregarded competent evidence. *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 92, 525 A.2d 841 (1987).

6. "Remuneration" is not statutorily defined, but has been judicially interpreted to mean "payment for services performed." *Allegheny Ludlum*

*Corp. v. Unemployment Compensation Board of Review*, 535 Pa. 125, 634 A.2d 587 (1993). "Employment" is defined at Section 4(l)(4) of the Law, 43 P.S. § 753(l)(4), as "all personal services performed for remuneration." Although Claimant was not physically working during his base year, he remained "employed". *See Lubovinsky v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 376, 526 A.2d 467 (1987).

The claimant in *Karamanian* became disabled and stopped working. Thereafter he received salary continuation payments under his employer's policy of continuing to pay salaried employees in the event of their disability. The Board excluded the salary continuation payments from its determination of the claimant's base year wages, based on its findings that those payments were a disability benefit rather than remuneration paid by the employer with respect to the claimant's employment. In affirming the Board, the *Karamanian* court emphasized the significance of the factual determination that the salary continuation payments "were made on account of the disability and not ... in consideration of any services which Claimant provided the employer." *Id.* 405 A.2d at 1365.

Similarly, in *Swackhammer*, the court upheld the exclusion of workers' compensation benefits from the calculation of the claimants' base year wages. The *Swackhammer* court stated that "[s]ince workmen's compensation payments [are] awarded to Claimants on account of their job related disabilities, and not in consideration of personal services rendered, such payments are not wages within the purview of the Law." *Id.* 484 A.2d at 853. *See also Whitling v. Unemployment Compensation Board of Review*, 95 Pa. Cmwlth. 500, 505 A.2d 1101 (1986), *petition for allowance of appeal denied*, 514 Pa. 640, 523 A.2d 346 (1987) (excluding supplemental unemployment benefits from calculation of claimant's base year wages because they were made on account of unemployment and were not made in consideration of personal services rendered, citing *Karamanian, McAnallen,* and *Swackhammer* ).

In the present case, the record reflects that the annual and sick leave payments to which Claimant was entitled while he was on "leave" status accrued to Claimant in direct relation to the personal services rendered with respect to his employment. Therefore, despite the characterization of the payment as "sick" leave, pursuant to the rationale set forth in *Karamanian,* this payment is not excluded as a matter of law from the calculation of Claimant's base year wages; rather, these payments are properly considered "wages" under Section 4(x) of the Law.[7]

We next address the proper allocation of these wages. While the Board made no findings with respect to Claimant's credibility, the Board disregarded findings made by the referee which were based on Claimant's uncontradicted and consistent testimony, the only evidence of record. Specifically, the Board ignored the referee's findings as to Employer's customary method of disbursing sick leave pay and the finding that the lump sum was paid in an attempt by Employer to resolve a dispute; without explanation, the Board issued findings to the contrary, findings which are not supported by competent evidence.

Although the Board is the ultimate fact finder, our Supreme Court has cautioned that the Board may not disregard the findings made by a referee which are based on uncontradicted and consistent testimony without stating its reasons for doing so. *Treon v. Unemployment Compensation Board of Review*, 499 Pa. 455, 453 A.2d 960 (1982); *Hercules v. Unemployment Compensation Board of Review*, 146 Pa.Cmwlth. 77,

---

**7.** With regard to our interpretation of Section 4(x)(8) of the Law, our court continues to abide by the long-standing principles of statutory construction as reaffirmed by the Supreme Court with respect to the Unemployment Compensation Law. *Lehr v. Unemployment Compensation Board of Review*, 155 Pa.Cmwlth. 396, 625 A.2d 173 (1993). Recognizing the remedial purposes of the Law, the courts consistently hold that the benefit sections of such remedial legislation must always be liberally and broadly construed to alleviate the distress of the involuntarily unemployed. *Id.* "[U]nless the provisions of the law unmistakeably [sic] compel the conclusion that benefits are to be denied, a remedy is to be found consonant with the purposes of the law, i.e. the granting of compensation." *Cugini v. Unemployment Compensation Board of Review*, 511 Pa. 264, 273, 512 A.2d 1169, 1173 (1986); *Lopata v. Unemployment Compensation Board of Review*, 507 Pa. 570, 493 A.2d 657 (1985).

Clearly, our role is to look beyond the label given to Claimant's accrued leave pay and examine its character. We conclude that the accrued sick leave payments in this case are a form of remuneration and are distinguished from the payments of disability benefits involved in *Karamanian* and *Swackhammer* which were made on account of the claimants' disability *and not* in consideration of any services performed.

604 A.2d 1159 (1992). Here, the Board heard no additional testimony before it rendered its decision. *See* Section 504 of the Law, 43 P.S. § 824. The Board had before it precisely the same record which is now before this Court which contains the testimony of one witness, Claimant. Although the Board had the right to reject that testimony, the Board did not have the right to arbitrarily and capriciously disregard the findings of the referee after the referee had listened to the witness, observed his demeanor, and made findings based upon his uncontradicted testimony. *Treon.*

The Board erred in disregarding the referee's findings without providing reasons for doing so. Accordingly, we reinstate the referee's findings that Claimant should have received the lump sum payment bi-weekly from April, 1994 through March of 1995, in accord with Employer's customary practice. (Referee's Findings of Fact Nos. 4, 5, 6.) *See Treon.*

 Finally, we address the application of the Board's administrative regulation providing that wages shall be deemed paid on the date on which they are generally paid by the employer. 34 Pa.Code § 61.3. The referee concluded that this regulation controls the manner in which the lump sum should be considered to be paid as a matter of law. The Board, without explanation, reached a contrary conclusion. However, "[a] duly promulgated regulation has the force and effect of law, and it is improper for the Board to ignore or fail to apply its own regulation." *Teledyne v. Unemployment Compensation Board of Review,* 160 Pa.Cmwlth. 17, 634 A.2d 665, 668 (1993). In *Cugini,* our Supreme Court specifically held that the Board is bound by this regulation and is required to treat wages as paid on the date the employer was supposed to make the payments, in this case, beginning in April, 1994. Thus, the Board also erred in concluding that the lump sum payment was properly assignable to the second quarter of 1994, rather than to the period from April of 1994 through March of 1995.

Accordingly, the decision of the Board is reversed.

*ORDER*

NOW, May 20, 1996, the order of the Unemployment Compensation Board of Review, at No. B–342687, dated October 26, 1995, is reversed.