# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stacey R. Tozzi,                 :
              Petitioner      :
                            :
        v.                     :     No. 864 C.D. 2015
                            :     Submitted: December 4, 2015
Unemployment Compensation    :
Board of Review,               :
              Respondent    :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**[1]            **FILED: March 18, 2016**

       Stacey R. Tozzi (Claimant), representing herself, petitions for review of the order of the Unemployment Compensation Board of Review (UCBR) affirming the decision of a referee to deny Claimant unemployment compensation (UC) benefits under Section 402(e) of the UC Law (Law)[2] due to her discharge from work for willful misconduct. We affirm.

       Claimant worked for Dawood Engineering (Employer) for two-and-a-half years as an administrative assistant. Referee's Dec., Finding of Fact (F.F.) No. 1. On November 12, 2014, at 1:00 p.m., Claimant, who was entitled to a 30-

---

[1] This opinion was reassigned to the author on February 16, 2016.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e). Section 402(e) of the Law provides that an employee shall be ineligible for benefits for any week "[i]n which his unemployment is due to his discharge . . . from work for willful misconduct connected with his work." 43 P.S. §802(e).

minute lunch break, asked the director of planning (Director) if she could extend her lunch break to one hour. F.F. Nos. 1, 3. The Director told Claimant that over the past two days Claimant had extended her lunch break without giving notice. F.F. No. 4.

"[C]laimant became agitated and upset with the [D]irector." F.F. No. 5. Claimant "was instructed to go take her lunch and that they would meet to discuss issues later that afternoon." F.F. No. No. 6 (emphasis added). The UCBR later added additional findings regarding this exchange. As discussed below, the UCBR found that "[C]laimant said loudly that the Director offended her by denying her request for an extended lunch break. [Claimant] later kicked a chair in the Director's office, moved to open the door, and banged the chair against the wall." UCBR Order, 4/6/15, at 1; see Referee's H'rg, 1/26/15, Notes of Testimony (N.T.), 1/26/15, at 8.

Claimant did not take her lunch break. Rather, Claimant walked around the reception area and tried to speak with a senior associate, John Hennings, regarding her confrontation with the Director. F.F. No. 7. Claimant and Hennings were seated in a room. F.F. No. 8.

More importantly, Claimant did not meet later with the Director as instructed. Instead, as the Director approached Claimant and Hennings, Claimant rose and closed the door before the Director could enter. Id. Claimant subsequently left the workplace without further discussion. F.F. No. 10. The Director indicated to Hennings that there should be an incident report regarding

2

Claimant's conduct. F.F. No. 9. Employer terminated Claimant's employment due to her conduct. F.F. No. 11.

Claimant applied for UC benefits, which the local service center granted. Employer appealed, and a referee conducted a hearing.

The referee concluded that the Director had concerns about Claimant's extended lunch breaks. Claimant maintained that the two previous extended lunch breaks were work-related. However, the referee stated that "there is no evidence that [Claimant] had attempted to discuss this in a calm and rational manner with [Employer] to determine if her absence from her work station was proper or that [Claimant] had properly notified [a] person or persons in authority regarding such continued absences." Referee's Dec. at 2.

On appeal, the UCBR adopted and incorporated the referee's findings of fact and conclusions of law. In addition, the UCBR accepted the testimony of the Director over that of Claimant and found that Claimant loudly told the Director that the Director offended Claimant. Also, the UCBR found that Claimant "kicked a chair in the Director's office" and "banged the chair against the wall." UCBR's Order at 1. The UCBR further stated that "the credible testimony from the Director … supports the finding that [Claimant] became agitated and upset with the Director, along with the conclusion that [Claimant] acted in an insubordinate manner." Id. The UCBR affirmed the referee, and this appeal followed.

3

On appeal,[3] Claimant initially contends that the UCBR erred in concluding that her actions amounted to willful misconduct. Specifically, Claimant maintains that she was not insubordinate and that the events merely evidenced a poor attitude that did not amount to willful misconduct.

It is an employer's burden to prove that a claimant's behavior constituted willful misconduct. Conemaugh Mem'l Med. Ctr. v. Unemployment Comp. Bd. of Review, 814 A.2d 1286 (Pa. Cmwlth. 2003). "Whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." Brown v. Unemployment Comp. Bd. of Review, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). Willful misconduct is defined as: (1) a wanton and willful disregard of the employer's interests; (2) a deliberate violation of the employer's rules; (3) a disregard of the standards of behavior that an employer rightfully can expect from its employees; or, (4) negligence that manifests culpability, wrongful intent, evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations. Guthrie v. Unemployment Comp. Bd. of Review, 738 A.2d 518 (Pa. Cmwlth. 1999).

Insubordination is defined as:

> '[a] willful disregard of an employer's instructions, esp. behavior that gives the employer cause to terminate a worker's employment … [or] an act of disobedience to proper authority; esp., a refusal to obey an order that a superior officer is authorized to give.'

---

[3] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

Scott v. Unemployment Comp. Bd. of Review, 105 A.3d 839, 846 (Pa. Cmwlth. 2014), appeal denied, 125 A.3d 779 (Pa. 2015) (citation omitted, emphasis added).

Claimant's conduct amounted to insubordination. In addition to Claimant's surprisingly aggressive attitude in the Director's office, as described by the credited testimony of the Director, N.T. at 8, she refused an instruction to remain available in the afternoon for further discussions on the issue of her extended lunches. Her conduct in general and this refusal in particular qualifies as insubordination.

Claimant also challenges the UCBR's finding that the Director's testimony was credible. Further, Claimant disputes the fact-finder's purported determination of willful misconduct based on violation of a work rule to notify a person in authority of an absence. Finally, Claimant assigns error in the referee's alleged failure to sufficiently assist her, specifically referencing pages 16 to 20 of the hearing transcript. Claimant asserts she was denied due process and equal protection by the referee's conduct of the hearing.

Claimant's additional arguments lack merit. The challenge to the UCBR's credibility findings are beyond our review on appeal. The UCBR as the fact-finder is free to accept or reject the testimony of any witness in whole or in part. Collier Stone Co. v. Unemployment Comp. Bd. of Review, 876 A.2d 481 (Pa. Cmwlth. 2005). This is true regardless of whether the witness gave the same

degree of detail about the conduct in question in prior statements to the UC authorities.[4]

Regarding Claimant's challenge based on violation of a work rule, the fact-finders did not rely on a violation of a work rule; rather, the referee explained that an employer could rightfully expect that an employee not be absent from a work station without notifying the appropriate person. Referee's Dec. at 2. Possible failure to act in accordance with such rightful expectation merited calm, rational discussion. Guthrie. Claimant failed to provide calm, rational discussion.

Finally, as to the conduct of the hearing, we carefully reviewed the hearing transcript. The referenced passages cover questioning of Claimant as of

[4] Claimant contends she did not receive sufficient notice of "new" charges against her because some details of the Director's testimony at the hearing differed from details set forth in Employer's Separation Information, Certified Record (C.R.), Item #3, especially a document written by the Director and marked as Exhibit 6 for the hearing, and in the Employer Records of Oral Interviews, C.R., Item #4, especially the record of the interview of the Director marked as Exhibit 12 for the hearing. Claimant asserts this lack of notice caused surprise and constituted a lack of due process.

Unfortunately, Claimant did not object to the referee based on surprise. Br. of Pet'r at 50. Regardless, when the UC authorities provide a claimant with a "Notice of Hearing" which states the specific issue to be considered at the referee's hearing is whether the claimant's unemployment was due to discharge from work for willful misconduct, the claimant has been apprised of the defense before her and, therefore, is not unfairly surprised. Davis v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 276 C.D. 2010, filed October 29, 2010) (unreported) (discharge for willful misconduct due to insubordination on last day). The Notice of Hearing in this case lists as the main issue for consideration discharge for willful misconduct. C.R., Item #11.

Further, there is no question that the Employer Separation Information and the Employer Records of Oral Interviews repeatedly identify Claimant's conduct toward her supervisor on November 12, 2014, as the basis for her termination. Indeed, the term "insubordination" appears numerous times. Nor is there any question that the Director was the main source of information on which Employer acted. In short, the documents in the record would inform a reasonable person as to the kind of conduct at issue on a date certain. See Davis. As such, no unfair surprise is apparent.

6

cross-examination by Employer's representative, and Claimant's examination of a favorable witness. In addition, Claimant makes the general argument that because she was unrepresented and she did not anticipate all of the Director's testimony, Claimant "misunderstood what was required to prove, failed to present critical evidence or objections, and failed to tell [her] story persuasively. (*Exhibit #6 and #12*)[.]" Br. of Pet'r at 50.

A referee has the responsibility to assist an unrepresented party at a hearing so that the facts necessary for a decision will be adequately developed. Coates v. Unemployment Comp. Bd. of Review, 676 A.2d 742 (Pa. Cmwlth. 1996); 34 Pa. Code §101.21(a). However, the referee is not required to become, and should not assume, the role of a claimant's advocate. McFadden v. Unemployment Comp. Bd. of Review, 806 A.2d 955 (Pa. Cmwlth. 2002). When a layperson choses to represent herself in a legal proceeding, she assumes the risk that her lack of expertise and legal training will prove her undoing. Vann v. Unemployment Comp. Bd. of Review, 494 A.2d 1081 (Pa. 1985).

Our review of the transcript fails to reveal any way in which Claimant was denied a fair hearing before a fair tribunal. Rather than advocating for any party, the referee merely re-directed testimony away from reading documents already in the record and toward witnesses recalling the day in question. E.g., N.T. at 16, 19. Also, in response to meritorious relevance objections, the referee re-formed questions for Claimant's witness. E.g., N.T. at 20 (Referee: "Sustain the objection. Ms. Gordon, tell me in your own words what you observed during the time period [the Director] described around 1:00 p.m."). There is absolutely

7

nothing in the transcript to support Claimant's assertion that the referee intimidated her.  Br. of Pet'r at 51.

Nor does the transcript support Claimant's premise that the referee did not do enough to further develop Claimant's version of the day in question.  To the contrary, the referee asked Claimant *four* times whether she wanted to testify on her own behalf.  N.T. at 16, 20.  However, she *declined* to testify on direct.  Id. Nevertheless, Claimant's version of the day in question was brought forth during questioning as of cross-examination by Employer's representative.  N.T. at 16-19. The referee allowed Claimant to call another witness to testify on her side of the case.  N.T. at 19-20.  Under these circumstances, we discern no deprivation of Claimant's rights by the referee.

For all the foregoing reasons, we affirm the UCBR's order.

_____
ROBERT SIMPSON, Judge

8

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Stacey R. Tozzi,                                                :
                 Petitioner         :
                                         :
           v.                                  :     No. 864 C.D. 2015
                                         :
Unemployment Compensation                  :
Board of Review,                                         :
                 Respondent         :

## **O R D E R**

**AND NOW**, this 18th day of March, 2016, the Order of the Unemployment Compensation Board of Review, dated April 6, 2015, concerning the claim for benefits by Stacey R. Tozzi, is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stacey R. Tozzi,            :
                                 : No. 864 C.D. 2015
               Petitioner    : Submitted: December 4, 2015
                                   :
              v.                     :
                                   :
Unemployment Compensation    :
Board of Review,              :
                                   :
               Respondent   :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY SENIOR JUDGE FRIEDMAN                FILED: March 18, 2016


Because I believe that the UCBR erred in concluding that Claimant's "agitation" amounted to willful misconduct, I respectfully dissent.


Unlike the majority, I do not believe that the UCBR concluded that Claimant's actions amounted to insubordination because she "refused an instruction." (Maj. Op. at 5.) Rather, the referee and UCBR described Claimant's "agitated" state as the reason for concluding that Claimant acted in an insubordinate manner. (UCBR Order at 1; Referee Dec. at 2.)


The UCBR concluded that "[C]laimant acted in an insubordinate manner during the . . . incident." (UCBR Order at 1.) The incident involved Claimant's

request to extend her lunch break from 30 minutes to one hour. (UCBR's Findings of Fact, No. 1.) The Director told Claimant that over the past two days Claimant had extended her lunch break without giving notice. (*Id*., No. 4.) "[C]laimant became agitated and upset with the director." (*Id*., No. 5.) "[C]laimant said loudly that the Director offended her by denying her request for an extended break." (UCBR Order at 1.)

Although a claimant's use of abusive, vulgar, or offensive language directed to a superior constitutes willful misconduct, *Allen v. Unemployment Compensation Board of Review*, 638 A.2d 448, 451 (Pa. Cmwlth. 1994), such conduct did not occur here. Claimant became agitated and upset with the Director. However, I do not believe that this emotional display constitutes willful misconduct.

In *Dincher v. Unemployment Compensation Board of Review*, 502 A.2d 797, 799-800 (Pa. Cmwlth. 1986), this court concluded that a claimant's dispute over a scheduling matter with his supervisor did not constitute willful misconduct. Similar to *Dincher*, Claimant was discussing a work matter with the Director, i.e., Claimant's request to extend her lunch break. Claimant, offended by the Director's response, became agitated and upset. Absent a finding that Claimant used abusive, vulgar, or offensive language during her exchange with the Director, I cannot conclude that Claimant engaged in willful misconduct.

Accordingly, I would reverse the UCBR's order.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

RSF - 2 -