# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Albert D. Medlen, III, : 
                   Petitioner : 
                                   : 
          v. :   No. 2667 C.D. 2015
                                   :   Submitted: August 12, 2016
Unemployment Compensation : 
Board of Review, : 
                Respondent : 

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**               **FILED: September 15, 2016**

Petitioner Albert D. Medlen, III (Claimant), acting *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed a Referee's determination that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law),[1] based on willful misconduct. For the reasons set forth below, we affirm the Board's order.

Claimant was employed as a fabricator for Lingis Manufacturing and Machining (Employer). (Certified Record (C.R.), Item No. 2). Claimant filed for unemployment compensation benefits after being discharged on July 7, 2015. (*Id.*)

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

The Lancaster UC Service Center (Service Center) issued a determination finding Claimant ineligible for unemployment compensation benefits. (C.R., Item No. 4.) Claimant appealed the Service Center's determination, and an unemployment compensation Referee (Referee) conducted a hearing on September 2, 2015. (C.R., Item No. 8.) Following the hearing, the Referee affirmed the Service Center's determination, concluding that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Law. (C.R., Item No. 9.)

Claimant appealed the Referee's decision to the Board,[2] which affirmed the Referee's decision and denied Claimant unemployment compensation benefits. (C.R., Item No. 12.) In doing so, the Board issued its own findings of fact:

1.  The claimant was last employed as a fabricator by Lingis Manufacturing and Machine at a final rate of $18.25 an hour and his last day of work was July 7, 2015.

2.  On July 7, 2015, the claimant engaged in an altercation with the assistant plant manager during which the claimant grabbed the assistant plant manager by his throat.

3.  The claimant was discharged for grabbing the assistant plant manager by his throat.

(*Id.*)

The Board concluded that Claimant was ineligible for unemployment compensation benefits, discrediting Claimant's testimony that he was not the

---

[2] We note that Claimant also requested a remand hearing from the Board as to allow Claimant to introduce new evidence into the record. By virtue of issuing a decision on Claimant's appeal based upon the existing record, the Board denied Claimant's request.

2

aggressor in the altercation that led to the termination of his employment.  (*Id.*)

The Board reasoned, in part:

> The Department of Labor and Industry (Department) issued a determination denying benefits to the claimant. The claimant filed an appeal, and following a hearing at which the claimant and three employer witnesses appeared and testified, the Referee issued a decision affirming the Department's determination.  Thereafter, the claimant filed a further appeal from the Referee's decision.  On appeal, the claimant asserts that he was granted subpoenas for witnesses but could not deliver them in time.  However, there is no evidence in the record that the claimant requested subpoenas or that a subpoena request was granted.  Even if the claimant was granted subpoenas, it is the claimant's responsibility to ensure they are delivered to the witnesses in time for the hearing.
>
> The parties dispute whether the claimant grabbed the assistant plant manager by the throat.  The Board resolves the dispute in favor of the employer.  The assistant plant manager and a laborer provided firsthand testimony that the claimant grabbed the assistant manager by the throat.  The claimant testified that he was not the aggressor, the assistant plant manager "gut shot" him in an attempt to knock him down, and that the claimant pushed the assistant plant manager out of self-defense. The Board discredits the claimant's testimony.  The claimant did not provide any evidence to corroborate his claims.  The general manager admitted and credibly testified that there was video surveillance of the incident, but the video did not show anything.  The employer sustained its burden of willful misconduct by providing evidence and firsthand testimony that the claimant grabbed the assistant plant manager by the throat. Therefore, the Board concludes that the claimant is ineligible for benefits under Section 402(e) of the Law.

(*Id.*)

3

On appeal,[3] Claimant essentially argues that the Board's decision is not supported by substantial evidence and that the Board erred in concluding that Claimant's actions constituted willful misconduct. Next, Claimant essentially argues that the Board erred in not granting a remand hearing as to allow video surveillance evidence of the incident to be added to the record. Lastly, Claimant essentially argues that the Board erred in not concluding that the Referee failed to adequately assist Claimant during the hearing, in violation of his due process rights.[4]

In addressing Claimant's argument regarding substantial evidence, we initially note that Claimant does not identify with specificity the Board's finding of fact that he challenges. In his brief, however, Claimant contends that he never grabbed the assistant plant manager by the throat, as he "merely pushed him away"

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] In his brief, Claimant also avers that this Court should compel Employer to present the video surveillance evidence from the date of the incident, as Claimant states that the video evidence is exculpatory, and Employer is required to disclose this exculpatory evidence. The legal requirement of a party to turn over exculpatory evidence, commonly referred to as the "Brady Doctrine," is inapplicable to the case before this Court, as this doctrine is only applied in criminal, rather than civil, proceedings. *See Brady v. Maryland*, 373 U.S. 83 (1963). Accordingly, Employer has no affirmative duty to present this video evidence, and this Court will not compel Employer to do so. Further, Claimant takes issue with the fact he was unable to present his own witnesses at the Referee's hearing, as Claimant's potential witnesses were not provided subpoenas prior to the hearing that would allow them to leave work. Title 34, Section 101.31 of the Pennsylvania Code, 34 Pa. Code § 101.31, allows for the issuance of subpoenas upon application to the Board. The Board, in its decision, found no evidence of record that would indicate Claimant had requested subpoenas or that any subpoena request had been granted. Based on these facts, we cannot conclude that there has been an abuse of discretion on the part of the Referee or a violation of Claimant's due process rights.

4

after the assistant plant manager initiated a physical confrontation. (Claimant's Brief at 9.) We, therefore, will interpret Claimant's argument as whether the Board's finding of fact number 2 is supported by substantial evidence.

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id*. A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

In an unemployment case, it is well settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Curran v. Unemployment Comp. Bd. of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000) (citing *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1386 (Pa. 1985)). The Board is also empowered to resolve conflicts in evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v.*

*Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Here, Claimant contends that substantial evidence does not exist to support the finding that Claimant grabbed the assistant plant manager by the throat, which led to Employer discharging Claimant from his employment. At the hearing before the Referee, Claimant testified to his recollection of the altercation as follows:

> I was operating the crane and Thomas[5] – I said, I was like, Thomas, why can't you just come talk to me? Why do you have to go cry to everyone else? And he must have took a sour note to it because he came charging up at me, gut shot me, tried to push his way through me to knock me over and it's a good thing I had a hold of the control box because I probably would have fell (sic) over. He had these two chunks of metal on his hand. He – and he said in a real aggressive tone, what did you say to me? I pushed him away. I said, what is your problem? He walked away, shaking these things, shaking the metal in his hand away from me down towards his table, was shaking them again approaching back up towards where I was at, slammed them on the table and said, you're done, and walked out of the building.

(C.R., Item No. 8.) In retort, Employer presented the testimony of three witnesses: Adam Martin, general manager for Employer; Thomas Barlow, assistant plant manager; and John Barlow, laborer. Thomas Barlow and John Barlow both

---

[5] Claimant is referring to Thomas Barlow, the assistant plant manager who was involved in the physical altercation with Claimant.

6

testified that Claimant not only put his hands on Thomas Barlow's throat, but that Claimant was the aggressor as well. (*Id.*) The Board found Employer's testimony to be credible, as opposed to Claimant's, which is well within the Board's discretion. *Curran*, 752 A.2d at 940. Based on Employer's credited testimony, substantial evidence exists to support the Board's finding that Claimant grabbed the assistant plant manager (Thomas Barlow) by the throat.

We next address Claimant's contention that the Board erred in concluding that Claimant's actions rose to the level of willful misconduct.[6] Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." Whether an employee's conduct rises to the level of willful misconduct is a question of law subject to this Court's review. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 368 (Pa. Cmwlth. 2008). The burden of establishing willful misconduct is on the employer. *Id*. at 368-69.

The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

---

[6] Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court. *Nolan v. Unemployment Comp. Bd. of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003). Whether an employee's actions constitute willful misconduct is a question of law subject to *de novo* review by this Court and must be determined based on a consideration of all of the circumstances. *Docherty v. Unemployment Comp. Bd. of Review*, 898 A.2d 1205, 1209 (Pa. Cmwlth. 2006).

Generally, the law is clear on what constitutes willful misconduct when there is an act towards another person. In *Sorge v. Unemployment Compensation Board of Review*, 370 A.2d 818 (Pa. Cmwlth. 1977), this Court stated that "*[p]hysical attacks* are clearly in disregard of the most basic standards of behavior which any employer may reasonabl[y] expect." *Sorge*, 370 A.2d at 819 (emphasis added). A single workplace altercation involving pushing or shoving can constitute willful misconduct as a matter of law. *Wisniewski v. Unemployment Comp. Bd. of Review*, 383 A.2d 254, 255 (Pa. Cmwlth. 1978). In *Pearson v. Unemployment Compensation Board of Review*, 954 A.2d 1260 (Pa. Cmwlth. 2008),[7] we stated that "*fighting or engaging in a physical altercation with a fellow employee or superior*, without good cause, constitutes a disregard of the standards [of] behavior an employer can rightfully expect from its employees." *Id.* at 1264 (emphasis added).

Here, the Board concluded that Claimant's grabbing of the assistant plant manager by the throat without having good cause constituted willful misconduct. The Board found that the Claimant grabbed the assistant plant manager by the throat during an altercation. These facts clearly constitute willful

---

[7] *Pearson* was abrogated on other grounds by this Court in *Maher v. Unemployment Compensation Board of Review*, 983 A.2d 1264 (Pa. Cmwlth. 2009), *appeal denied*, 996 A.2d 493 (Pa. 2010).

8

misconduct, because Claimant's actions were in disregard of the standard of behavior that an employer has a right to expect of an employee. Accordingly, the Board did not err in concluding that Claimant engaged in willful misconduct.

We now turn to Claimant's next argument that the Board erred by accepting Employer's testimony as credible as opposed to waiting for Claimant to ascertain the content of the surveillance video. Specifically, Claimant argues that the testimony provided by Employer should be disregarded in favor of the surveillance video, as there is a familial relationship between the Employer's witnesses.[8] This argument is also unpersuasive. As previously mentioned, it is the sole discretion of the Board to make decisions regarding witness credibility. At the hearing, Employer's witness testified that video surveillance of the incident existed but did not show anything that would assist the Board in making its determination. (C.R., Item No. 8.) The Board, in its decision, found this testimony to be credible. Moreover, the familial relationship between Employer's witnesses goes to weight and credibility and does not require the introduction of other corroborating evidence.[9] (C.R., Item No. 12.) Further, Claimant knew that video of the

---

[8] In his brief, Claimant also argues that the video surveillance from the altercation should be admitted, pursuant to the best evidence rule. The best evidence rule is a technical rule of evidence, not generally applicable to administrative hearings. *See DiLucente Corp. v. Pa. Prevailing Wage Appeals Bd.*, 692 A.2d 295 (Pa. Cmwlth. 1997). As the Board points out in its brief, agencies of the Commonwealth are not to be bound to such technical rules of evidence. *See* 2 Pa. C.S. § 505. Further, as the Board pointed out, one of Employer's witnesses credibly testified that he had reviewed the video and it showed nothing that would assist the Board in making a determination. Accordingly, Claimant's argument regarding the best evidence rule is without merit.

[9] We also note in the Board's response to Claimant's request for a remand hearing, the Board stated that it will grant a remand hearing if it finds it "necessary to enable [the Board] to render an appropriate decision." (C.R., Item No. 10.) By rendering a decision based upon the

**(Footnote continued on next page…)**

altercation existed at least a month before the hearing before the Referee, giving Claimant ample time to subpoena the video if he felt it necessary. On Claimant's petition for appeal dated August 7, 2015, Claimant indicated that video footage of the incident existed. (C.R., Item No. 5.) Claimant's notice of hearing, which was mailed to him on August 19, 2015, indicated that the hearing would be held September 2, 2015. (C.R., Item No. 6.) This form also made Claimant aware that he had the right to request a subpoena. (*Id.*) As the Board noted in its decision, there is no evidence of record that would indicate Claimant made any attempt to subpoena the video. Accordingly, the Board did not err in accepting the testimony of Employer's witnesses as credible without consideration of video evidence.

Lastly, we address Claimant's argument that the Board erred in failing to conclude that the Referee failed to adequately assist Claimant during the hearing in violation of his due process rights. Specifically, Claimant argues that the Referee should have continued the hearing so as to allow Claimant to present witnesses and ascertain the content of the surveillance video. We do not agree. In order to satisfy due process requirements, referees overseeing unemployment compensation hearings have a responsibility to assist a *pro se* claimant at a hearing so that the facts of the case necessary for a decision may be adequately developed. *Coates v. Unemployment Comp. Bd. of Review*, 676 A.2d 742, 744 n.3 (Pa. Cmwlth. 1996). At a minimum, a referee must advise a *pro se* claimant of the claimant's due process rights to be represented by counsel, to cross-examine adverse witnesses, and to offer witnesses in the claimant's own behalf. *Brennan v.*

---

**(continued…)**

existing record, the Board denied Claimant's request for a remand hearing, thus finding the record sufficient and the inclusion of video surveillance unnecessary.

*Unemployment Comp. Bd. of Review*, 487 A.2d 73, 77 (Pa. Cmwlth 1985). Remand is appropriate when the referee fails to advise a *pro se* claimant of those rights. *See Lauer v. Unemployment Comp. Bd. of Review*, 445 A.2d 1353 (Pa. Cmwlth. 1982); *Hoffman v. Unemployment Comp. Bd. of Review*, 430 A.2d 1036 (Pa. Cmwlth. 1981). The record, however, indicates that these due process requirements were satisfied. At the hearing, the Referee made all parties aware of these rights immediately after swearing in the parties. (C.R., Item No. 8.) As such, this Court finds that the Board did not err in failing to conclude that the Referee failed to adequately assist Claimant during the hearing in violation of his due process rights.

Accordingly, we affirm the order of the Board.


_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Albert D. Medlen, III, :
                Petitioner :
 :
     v. : No. 2667 C.D. 2015
 :
Unemployment Compensation :
Board of Review, :
              Respondent :

## *O R D E R*

AND NOW, this 15th day of September, 2016, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge